CITY OF KIRKWOOD ex rel. BLACKMER & POST PIPE COMPANY, Appellant, v. TOM J. BYRNE et al., Respondents.

St. Louis Court of Appeals. Argued and Submitted December 6, 1909. Opinion Filed January 4, 1910. Opinion Modified and Re-filed January 18, 1910.

1. ADMISSIONS: Judgments: Judgment in Face of Admitted Facts. In a suit against a contractor and the surety on his bond, for material furnished, where both defendants admitted that sums were due, it was error to render judgment for them.

2. INSTRUCTIONS: Request After Finding: Trial Practice. After a court had announced its findings of fact, it properly refused to allow a party to file, or have considered, any declarations of law.

3. PRINCIPAL AND SURETY: Construction of Obligation. While it is true that the contract of the surety cannot be extended beyond the fair scope of its terms, the reason of the old rule that made the surety a favorite of the law has been greatly weakened by modern conditions, under which suretyship has become a business for profit.

146 App.—31

City of Kirkwood ex rel. v. Byrne.

4. ———: Suit on Bond: Pleading: Amendment of Statement of Account. In an action on a bond against a contractor and his surety for material furnished, where the statement of account attached to the petition contained items owing by the contractor, but not properly chargeable against him in that case, and also contained a credit for an amount paid, it worked no injury on the surety to permit the statement to be amended by striking out the items improperly included and to reduce the credit proportionately.

5. ———: ———: Evidence: Identification of Material Specified in Statement of Account not Necessary. In an action on a bond against a contractor and his surety for material furnished, where an itemized statement of account, showing the dates of shipment and the car number, is attached to the petition, it is not necessary that the material be identified as having come out of the particular car specified, but it is sufficient to show the material was furnished; the cause of action being on the bond and not on the statement of account, the latter constituting merely one link in the chain of evidence by which the ultimate fact is to be proved.

6. EVIDENCE: Measurements by City Engineer: Quantity of Material Furnished. In a suit for sewer pipe furnished for the construction of certain sewers, where the amount of pipe used was in dispute, testimony by the assistant city engineer as to official measurements of these sewers was properly admitted.

Appeal from St. Louis City Circuit Court.—*Hon. Chas. C. Allen,* Judge.

REVERSED AND REMANDED (*with directions*).

*Dawson & Garvin* for appellant.

(1) Upon finding out the fact that some of the eight and ten inch pipe and junctions had not been used in the district sewers, relator reduced its gross demand in this suit for district sewer material by that amount and reduced the credit given district sewers by an equivalent amount, leaving the net balance unaffected. (a) Relator's intent to so apply unappropriated payments as to leave an unpaid balance of $1894.57 for district sewer material furnished, is unmistakable and its correction of the gross charge and credit without altering

the net balance claimed on this account, evidences no change of intention and is no waiver of its rights and ought not in any manner to relieve the defendant or his surety in this action. (b) As Byrne did not direct the appropriation of payments, the relator had the right to appropriate them as it chose, and as it did in this case. Lime & Cement Co. v. Bank, 158 Mo. 272. Substantially the same result is reached by use of the other rule of appropriation of payments, that if neither the debtor directs nor the creditor applies, then the law will apply payment to the debt which first matures, unless justice and equity demand a different appropriation. Beck v. Haas, 111 Mo. 264. (c) The defendant surety ought not to be relieved from liability, to relator for the unpaid reasonable value of the number of lineal feet of sewer pipe and junctions furnished to and used by the contractor in building the district sewers, simply because the relator under a mistake of fact innocently included in its demand a larger number of lineal feet of the same kind, quality and value of sewer piper and junctions. The courts in construing the law governing mechanics' liens have so decided. For example see Kittrell v. Hopkins, 114 Mo. App. 431; Eau Claire St. Louis Lumber Co. v. Wright, 81 Mo. App. 535; Kittrell v. Hopkins, 114 Mo. App. 438; Fitch v. Baker, 23 Conn. 563. (2) The exceptions to the court's finding and motion for new trial should have been sustained. Bank v. Lumber Co., 102 Mo. App. 75. (3) The contract of the surety company is a continuing and unlimited guaranty of payments for all material used in the district sewers with a limited liability of $10,000 affixed thereto and defendant surety is liable for all such material furnished by relator and not paid for by Byrne to an amount not exceeding $10,000. Payments made by the principal do not *pro tanto* discharge the surety company, but its liability remains for $10,000 named in the contract if it required that sum to make good the default of its principal. Kansas City to use v. Youmans, 213 Mo. 151.

(4)   This court is authorized to and should reverse the judgment in this case; and, the facts being practically undisputed, this court may properly give such judgment as the trial court ought to have given as to this court shall seem agreeable to law.   Land Co. v. Bretz, 125 Mo. 418; Blount v. Spratt, 113 Mo. 48; Sec. 866, R. S. 1899.

*Jones, Jones, Hocker & Davis* and *Thomas H. Sprinkle* for respondents.

(1)   The finding of the court is conclusive.   Kellerman v. Railroad, 68 Mo. App. 255; Meyer Bros. v. Insurance Co., 73 Mo. App. 166; Gaines v. Fender, 82 Mo. 497; Hamilton v. Boggess, 63 Mo. 233.   (2)   There was a total failure to prove that the articles specified in the account attached to the amended petition went into or were made a part of or were used in the district sewers.   The action is on a bond, and the burden is upon relator to show that there has been a breach of the bond, i. e., to show that the material the price of which is sued for in this action actually was used or went into the district sewers.   Overbeck v. Mayer, 59 Mo. App. 289; McFall v. Dempsey, 43 Mo. App. 369; Blair v. Insurance Co., 10 Mo. 559; Fisse v. Einstein, 5 Mo. App. 78; Springfield Co. v. Hobart, 98 Mo. App. 227; Simmons v. Milo, 60 Mo. 581; Schulenburg v. Prairie, 65 Mo. 295; Deardorff v. Everhart, 74 Mo. 37.   (3)   The relator, as shown by its ledger account, gave credit to defendant Byrne for $3429.05. It, therefore, applied the credit of $3429.05 to the debit items contained in the account filed with its first petition; all of the debit items in the first account were not included in the second account.   In the account filed with its first petition relator gave credit for only part of this aggregate credit of $3429.05 to-wit: $3050.29.   There was, therefore, an application by the creditor of the sum of $3429.05 on all the items debited in the second account, and that application could not be withdrawn or changed by the relator

without the consent of defendant Byrne *a fortiori* without the consent of his surety. Bopp v. Wittich, 88 Mo. App. 129; McCune v. Belt, 45 Mo. 181. (4) There can be no recovery against the surety in this case, because, on the entire record, it is impossible for the court to say what part of the material sued for was in fact paid for.

STATEMENT.—This is a suit upon the bond of Byrne, contractor and principal on the bond, and the Title Guaranty & Trust Company of Scranton, Pennsylvania, surety thereon, the bond being given to the city of Kirkwood, upon the condition that whereas the city of Kirkwood, by ordinance, has provided for the construction of district sewers in the city, and whereas Byrne was awarded the contract for the building and construction of district sewers in said city, as provided by ordinance, and whereas upon entering into the contract with the city of Kirkwood, he has agreed and bound himself to complete the district sewers and the city has obligated itself to issue to him special taxbills in the manner provided in the contract: Therefore, if Byrne shall build the district sewers within the time, in the manner, of the materials and in all respects according to the requirements and provisions mentioned and stated and set out in the ordinance and contract and in all things carry out the contract, "and shall pay for all materials used in the building of said sewers, and shall pay for all labor performed on the building and construction of the said district sewers, then this bond shall be null and void, otherwise to remain in full force and effect."

The contract here referred to was for the construction of district sewers known as district sewer No. 1 and district sewer No. 2. In addition to the contract for the construction of these district sewers, Byrne had a separate contract for the construction of public sewers Nos. 1 and 2. These public sewers 1 and 2 were under course of construction at the same time that

work of construction of district sewers 1 and 2 was commenced. Upon obtaining the contracts for the construction of the public and of the district sewers, Byrne contracted with the Blackmer & Post Pipe Company for all of the sewer pipe that would be required in the execution of these contracts, at prices and on terms agreed upon between them, the prices to be f. o. b. cars at Kirkwood, the pipe company agreeing to allow Byrne credit for the freight. This offer to furnish the pipe was, as appears, at first made verbally to the pipe company, but on April 24, 1905, was accepted by a letter setting forth the terms of it and in this letter the pipe company asked Byrne to confirm their verbal order, whereupon on the 26th of April, 1905, Byrne wrote to the pipe company, saying: "It is with pleasure I place my order with you for all sewer pipe at Kirkwood, Missouri, as per your proposition of March 30th and April 24th."

The case was tried upon an amended petition, which set out the fact of the letting of the contract to Byrne, the execution of the bond, the entry upon the performance of the contract by Byrne, and the purchase by Byrne from the Blackmer & Post Pipe Company, of "sewer pipe, 'Ys,' junction caps, 'Ts,' etc., in the quantities and amount, and at the price, and on the dates specifically set out in the itemized account hereto attached, and made a part of this petition, and marked 'Exhibit B;' that the said sewer pipe, 'Ys,' 'Ts,' caps, etc., were purchased for use in the construction by said Byrne of said district sewers in said city of Kirkwood, under said contract, and said material was actually used in said construction, and became and is a part of said district sewers so far as the same were constructed by said Byrne." It is further set out in this amended petition, that the articles were reasonably worth the prices charged; that Byrne agreed to pay for them at those prices and that the aggregate value was the sum of $3331.98, on which Byrne had paid $1437.22, with which amount he had been duly credited, leaving a balance due

and unpaid of $1894.56; that relator had demanded payment of this amount on the first of December, 1905, and had since that time made frequent demands for payment but that Byrne had wholly failed to pay the same or any part of it. It is further averred that the relator, the pipe company, was at all times familiar with the fact that Byrne was to furnish and had furnished the city the bond to secure his contract and that in furnishing and delivering the sewer pipe, material, etc., to Byrne for use in the district sewers, the pipe company relied upon the provisions set forth in the bond sued on. It is also averred that demand had been made upon the defendant, the Title Guaranty & Trust Company of Scranton, Pennsylvania, for the payment of the balance and payment had been refused. Judgment is asked for the penalty of the bond, $10,000, and that execution be awarded for the sum of $1894.56, with interest from the 1st of December, 1905, and costs of suit.

Along with the amended petition is an account, which sets out on the debit side, the car number, the date of the arrival of the car at Kirkwood, as we understand it, the number and description of the contents of the car, and the value of the articles contained therein, as also the initial and number of the car. To illustrate, we give the first and the last items in this account:

| Car No. | Quantity. | Size. Description. | Amount. | |
|---|---|---|---|---|
| Initial. 1905 June 6 | Pieces. Length. Feet. 37  928 50 | 8"  Pipe at  .45<br>6x8  Ys  1.80<br>6"  Caps (free) | 417.60<br>66.60<br>——<br>484.20 | |
| | Car  14929  M. P. | 73 off | 353.47 | 130.73 |
| *   * | *   *   *   *   * | *   *   *   *   * | *   * | *   * |
| Nov. 21. | 1158<br>13 | 8"  Pipe at  .45<br>6x8  Ys  at 1.80 | 521.10<br>23.40<br>——<br>544.50 | |
| | Car 105 H. C. A. & N. | 73 off | 397.49 | 147.01 |

The size of the pipe in this account is eight and ten inch pipe, the caps appearing to be six inch caps, the "Ys" six by eight inch. The credit items are composed of two only, first, freight on twenty cars, that being the number of cars charged for in the account, $175.67; and cash, August 15, 1905, $1261.55, a total of $1437.22, leaving a balance of $1894.76.

The defendant Byrne answered by general denial all of the allegations in the amended petition, except as to the incorporation of the Title Guaranty & Trust Company, and that he is a contractor, engaged in constructing sewers, and a resident of St. Louis, and that the city of Kirkwood is an incorporated city of the fourth class. These matters he admits.

The defendant trust company, admitting the incorporation of relator and its own incorporation and that Byrne is a resident of St. Louis and a contractor, engaged in constructing sewers, and that Kirkwood is an incorporated city of the fourth class, denies that by ordinance the city of Kirkwood provided for the construction of district sewers in the city of Kirkwood, denies that the defendant Byrne contracted with the city to build and construct the district sewers, denies that Byrne was required to give or that he did give the bond, or that the bond given was conditioned as described in the petition, denies that Byrne undertook to or did construct the district sewers, as alleged, denies that Byrne purchased of the plaintiff or that plaintiff sold and delivered to Bryne, "between the 19th day of May, 1905, and the 21st day of November, 1905, or at any other time, the sewer pipe, 'Ts,' junctions, caps, and 'Ys,' of the quantity or at the price or on the dates set forth in the itemized account attached to plaintiff's petition and marked 'Exhibit B.' " It also "denies that said sewer pipe, 'Ys,' 'Ts,' and caps were purchased for use in the construction by said Bryne of the district sewers of the city of Kirkwood, and denies that the same were actually used in said construction or that they

became a part of the district sewers of the city of Kirk-wood;" denies that the sewer pipe, etc., sued for were reasonably worth the prices charged or that Byrne agreed to pay for the same at the prices charged in the account attached to the petition; "admits that the aggregate of the price so charged in said account is $3331.98, and charges that the defendant Byrne has paid on account thereof the sum of $3050.29. Denies that the balance due and unpaid is $1894.57." Denies demand for payment; denies that relator was familiar with the fact that Byrne was to furnish and had furnished the city of Kirkwood any bond as averred and that in furnishing and delivering the same relator relied upon the provisions set forth in the petition; denies demand made upon it for any balance.

A reply was filed to this answer, denying the allegations therein contained.

A jury was waived and the cause tried before the court.

At the trial the account sued on was introduced in evidence, as also the contract and bid of relator and its acceptance. The ordinance, contracts and bond were also in evidence.

The assistant city engineer of Kirkwood, Mr. Wilson, who seems to have had charge of supervision of this work of construction of the sewers, testified that the public and district sewers were constructed together, the work being commenced on the district sewers before the public sewers were completed. According to the estimates there were to be 17,564 feet of 8-inch pipe, 4538 feet of 10-inch pipe, 700 feet of junctions on the 8-inch pipe, 180 feet on the 10-inch pipe, in district sewer No. 1. In district sewer No. 2, there were to be 11,698 feet of 8-inch pipe, 3470 feet of 10-inch pipe, 468 feet of junctions for the 8-inch pipe and 123 feet of junctions for the 10-inch pipe. These were the estimates and this witness testified that under the supervision of the engineer, he made measurements of the quantity of the several sizes

of pipe laid and recorded said measurements at the time the pipe was being laid, in note books, which were filed in the city clerk's office as part of the records of the city engineer—are his field notes; that he had those books of field notes before him and had taken off lists of the material; that there was 12,365 feet of the 8-inch sewer pipe, including junctions, etc., and 2685 feet of the 10-inch sewer pipe, including junctions, etc., laid in district sewer No. 2 by Mr. Byrne; that in district sewer No. 1, Byrne laid 7911 feet of 8-inch pipe, including the junctions, etc., and 1108 feet of 10-inch pipe, including necessary junctions, etc.; that work on district sewer No. 1 was begun by Byrne the fore part of August, 1905, and continued to the latter part of November, 1905; that he also took off of said field notes the total amount of sewer pipe laid in completed district sewer No. 1 and deducted from that total, *viz.*, 17,148 feet of 8-inch sewer pipe and 4014 feet of 10-inch sewer pipe, the quantity laid therein by the Geisel Construction Company, in completing said district sewer No. 1, *viz.*, 9226 feet of 8-inch sewer pipe and 2888 feet of 10-inch sewer pipe, which difference shows a little more, but corresponds substantially with his measurements of sewer pipe laid by Byrne. He further testified that all this work and material had been furnished and done by Mr. Byrne under his contract; that the work done in district No. 2 was paid for to Byrne by the city, but nothing had been paid on district sewer No. 1, as Byrne did not finish that. The taxbills issued on the work were offered by relator but excluded. The work was begun on district sewer No. 2 about the 1st of June, 1905, and completed in August, 1905; it was begun on district sewer No. 1 in August and continued until the latter part of November, 1905, when Byrne abandoned it, the Geisel Construction Company completing it. It also appeared in evidence that as the pipe arrived at Kirkwood on the cars, consigned to Byrne, Byrne, as he needed it in the public sewers or in the district sewers on which he

was working, would take the pipe from the freight cars and haul it to the public sewers or the district sewers, accordingly as he was working on the one or the other at the time, and that the same character of pipe, both 10- and 8-inch, and the joints, or "Ts," and "Ys," went into both the two district sewers and the public sewers, and that the work done on the public and district sewers was all done between May, 1905, and May, 1906. About half of the public sewer No. 2 was completed at the time when work was begun on district sewer No. 2. Most of public sewer No. 1 was completed at the time the work on the district sewer No. 1 was begun.

The second vice-president of the relator, Mr. Wallace, testified to making the contract on behalf of the relator for furnishing the pipe, testified he was familiar with the reasonable value of the sewer pipe, etc., examined the items and prices in the exhibit, stated he was familiar with them, that the prices are correct and that they are the reasonable market value of the pipe at that time. The pipe charged for in the exhibit is not all the pipe sold to Byrne but is a part of it. When they made the contract to furnish Mr. Byrne with the pipe for the sewers, they knew that there were two classes of sewers; that Mr. Byrne had contracts both for public and district sewers and the letters accepting the proposed contract for furnishing this pipe, covered both. Also knew that Byrne had given bond. This witness also testified that they had furnished Mr. Byrne all the pipe called for in their proposition to him. The relator company, this witness testified, had nothing to do with hauling the pipe from the station or cars to the work; that was to be done by Mr. Byrne. There was no evidence given tracing any particular shipment to any particular sewer, the evidence, however, tended to prove that all the pipe furnished and shipped went into the sewers Byrne was constructing.

It appeared in evidence that when the action was first commenced the account filed with it included much

more pipe, covering pipe that was also furnished for the public sewers. Mr. Garvin, called by defendant as a witness, explained the matter in this way:

"A.   I thought there was not enough in it to justify me in bringing that suit.   That was my opinion.   As explanatory, I want to state that at the time 'Exhibit B,' which is attached to the original petition, was furnished me, I supposed it contained only the items of pipe that actually had gone into the district sewer.   Later, in getting the proof together for the trial, I became satisfied that it included pipe other than that which had gone into the district sewers, and I had them carefully revise their account and make up the account which I attached to the amended petition in this case, and in doing that I found that, as has already been testified to here, the error consisted in including in the account pipe which was shipped from May 9th down to June 1st, whereas the district sewers had not been begun, as we learned subsequently, until about June 1st, and that that part of the account ought to be taken out of the account, and was taken out of the account, and is not in the amended petition, and the credit was reduced proportionately to the amount that was taken out of the account.

"Q.   By the proportional reduction of the credit of $2000?   A.   Yes.

"Q.   From $2000 to $1260, and that was thus reduced after the original petition in this suit was filed? A.   That was the way the account was made up by my client, which I did attach to the amended petition.   At that time I had not seen the books and did not know until the books came here what shape it was in on the books.

"Q.   Until about the time the amended petition was filed in this case, there never was, so far as you know, any credit on the books or on any account for the sum of $1261.55, in those exact figures?   A.   Well, I

knew from the original account there the total amount of credits and I understood—

"Q. It was $2000? A. Well, that particular payment was $2000, and I understood when the amended account was given me that portion of the $2000 was rightly applied to the district sewers, the other having been applied to the payment of pipe that did not go into that sewer, which was furnished prior to that time.

"Q. And so far as you know, there was no segregation or apportionment of the $2000 into the two sums, one of which was $1261.55, until about the time of the filing of this amended petition? A. That is my understanding of it, with this explanation: that I did understand at the time that amended petition was filed that they had applied payments to the shipments oldest in point of time. That I understood to be the case, and I understood that this apportionment was between shipments that had been made prior to that time, but some of those shipments had not gone into the district sewers."

The witness Wallace testified as to this, that the mistake made in making out the first account had been occasioned by their understanding, from Mr. Byrne, that all of the 8- and 10-inch pipe was to go into the district sewers and when they discovered that some of it had gone into the public sewers, they took out of the account attached to the original petition, the 8- and 10-inch pipe that went into the public sewers, and the account attached to the amended petition contains only the pipe that went into the district sewers, and adjusted the credit accordingly. This is practically the testimony so far as relates to the pipe and the account. At the request of the defendants the court made a finding of fact which we summarize in part.

After first finding as a fact that Byrne had two separate contracts for the construction of sewers, one for public and the other for district sewers, and that he gave two bonds, with the defendant, the Title Guaranty & Trust Company, as surety on each, one for the perform-

ance of the public sewer contract, the other for the performance of the district sewer contract; that while the bond for the public sewers did not indemnify materialmen, the bond in suit covering the construction of the district sewers did, and that relator is materialman and that this action is for sewer pipe furnished by relator to Byrne on the dates set forth in the account, which relator claims went into the district sewers, the court finds that relator actually furnished sewer pipe on the dates and of the quantities, sizes and values set out in the amended account filed with the amended petition, the aggregate value of which is $3331.91, but that this is not all of the pipe furnished by the relator but is all of the pipe for which it seeks to hold the defendant in the case, and that other pipe of the same and of different sizes was furnished on the same dates set forth in the foregoing statement and also furnished on other dates, but as parts or the whole of other shipments but for which other pipe relator is not seeking to recover, the court then finds this, which is really the crucial part of the finding, as follows:.

"In making shipments of the pipe to Byrne, no attempt was made to segregate the pipe that was intended for the district sewers, from that which was intended for the public sewers. The pipe (both that for which it sues and that for which it does not sue) was shipped by the relator from St. Louis to Byrne at Kirkwood, and, as needed by him, he would take the pipe from the cars and use it either in the public sewers or in the district sewers (both of which were being constructed during the same period of time) as the exigencies of his business seemed to require, and according to his own will and judgment, and no record was kept, either by the relator or by Byrne or any other person, and no evidence has been offered tending to show what part of each particular shipment (or that any or all of each item sued for, or that any part of any item went into the district sewers), or that part of each particular shipment

or item went into the public sewers, and there is no evidence in the case on which the court can base a finding of fact that the particular pipe sued for, or any particular shipment, or any part of any shipment, went into the district sewers.

"The court, therefore, finds that the relator has not established that the particular pipe sued for, or any part thereof, went into the district sewers, and therefore, as to the Title Guaranty & Trust Company, a judgment must be in its favor."

The defendant further asked the court to find as a fact, this, among other facts:

"The defendant, Byrne, admits his liability for the full amount sued for, $3331.91, and, as above indicated, he is entitled to a credit of $2000, leaving the balance due by him of $1331.91, for which, as against defendant, Byrne, the relator is entitled to a judgment, with interest at the rate of six per cent per annum, aggregating —— dollars.

"The court, therefore, directs judgment in favor of the defendant Title Guaranty & Trust Company against the relator, that it go hence without day and recover its costs, and in favor of the relator against the defendant, Byrne, for the sum of —— dollars and costs."

The court, however, struck the above out, refusing to give it. After the court had overruled objections made by relator to giving the finding of facts asked by defendants, and after it had made its finding, relator asked that certain declarations of law be given. The court refused to give them, declined to allow them to be filed, and found the issues for the defendants.

Relator in due time filed its motion for new trial, which was overruled and an appeal duly perfected to this court, exceptions having been duly saved to the adverse action and rulings of the court.

REYNOLDS, P. J. (after stating the facts).—It is impossible to sustain the finding and judgment in this case. The answer of the defendant, Title Guaranty & Trust Company, charges and admits that on an account of $3331.98, a payment of only $3050.29 had been made, and denies that the balance due is $1894.57. According to this admission, $281.69 was due, even by the surety company. We do not understand why relator should not have had judgment for this. Moreover the defendants in their requests for findings set out that Byrne admits his liability for the full amount sued for, $3331.-91, and claims credit for $2000, leaving a balance due by him of $1331.91, for which against defendant Byrne, relator is entitled to a judgment with interest. Why the court, with this admission, entered judgment in favor of both defendants is not comprehended.

The refusal of the court to allow relator to file or to have considered its declarations of law after the finding of the court had been announced, was correct. [Young v. Stephens, 66 Mo. App. 222; Butts v. Ruby, 85 Mo. App. 405.]

Passing these, the court, as shown by an examination of the abstracts of testimony and by the course of the trial, as well as by the above finding, proceeded upon the theory that relator was bound to prove what particular items as set out in the account and as contained in each car, had gone into these district sewers. As we understand the evidence in the case, it is conclusively shown that the number of feet of pipe, "Ts," "Ys," etc., charged for in this account were used in the construction of these district sewers. The price and value of these materials are not in dispute. That their aggregate in value, as given in the accounts, is $3331.98, is practically admitted in the answer of the surety company, that company pleading that $3050.29 had been paid on account thereof. It is true that this admission seeks to confine it to the aggregate of the price charged in the account, but this is a mere play on words. It is also

clear that the first account filed, by which $2000 was credited as a payment, was incorrect in that that account included charge for material that had gone into the public sewers. The plaintiff relator corrected this and deducted from the account the items that went into the public sewers. When it corrected one side of the account it was bound to correct the other. It had a right to deduct from the credit the apportioned amount covered by the charges deducted. This was a mere act of bookkeeping entry, which in no possible manner prejudiced either of the defendants. The testimony shows it was an error induced by Byrne himself. Certainly it did not prejudice the contractor, who was principal on the bond, and how it mattered to the surety or injured or misled it, is not apparent.

It is true the contract of the surty is to be enforced only as he has made it. The learned and industrious counsel for the respondents urge that it is elementary that the contract of the surety must receive a strict construction and cannot be extended beyond the fair scope of its terms and cannot be extended by implication, "the surety being a favorite of the law and as such has the right to stand on the strict terms of his obligation. It is to be strictly construed and cannot be extended beyond the fair scope of its terms." While it is a rather venerable rule that the surety is "a favorite of the law," the force of this is greatly shattered by latter-day conditions, suretyship having become largely a matter of bargain and trade, and no longer the voluntary obligation of friends. Notwithstanding the fact that this sentimental consideration has to a great extent disappeared it, however is still true that the obligation of the surety is not to be extended beyond the letter of the bond. But applying that to the case at bar, we are unable to see that it is in any way violated or its force diminished by holding the surety in this case to the

terms of its bond, by which it undertook to pay, if the contractor did not pay, claims for material furnished which went into these district sewers. Nor do we think that the surety is in any way injured by the change in bookkeeping which was made, for this is all that it was, in the application of credit to that part of the account. to which it properly belonged. The creditor had a right, in the absence of a contract or specific direction to the contrary, to do this. This change of credit produced no change in the relative situation of the parties, if it was correctly done and made the payment to apply only to that part of all the pipe furnished which actually went into the construction of the district sewers. That appears to be what was done. If properly adjusted, the fact that before then the credit had been applied to the whole account is immaterial and wrought no harm. Neither principal nor surety are entitled to claim credit for more than the actual amount pertaining to the account; the surety was not misled, the real situation of the parties had not changed.

The radical error in that part of the finding of fact which we have quoted, lies in the concluding part of it in which the learned trial judge finds: "There is no evidence in the case on which the court can base a finding of fact that the particular pipe sued for, or any particular shipment, or any part of any shipment, went into the district sewers." This theory was forced into the whole trial of the case, by an extremely technical line of objections to evidence. In our view of the case, it is radically wrong. The basic fact in the case is, how much of the pipe and fittings furnished by the relator to the contractor went into the district sewers. What cars they came out of, of what particular shipment they formed a part, is wholly immaterial. The case appears to have been tried upon the theory that the account filed with the petition was the cause of action. This is a mistake. The cause of action is on the bond; the breach assigned being the non-payment for sewer pipe and fittings.

furnished under contract to Byrne by the relator. The account filed, itemized as it is by cars and dates of shipment, is merely one link in the chain of the evidence by which the ultimate fact is attempted to be proved. Its principal service is to furnish to the defendant a statement of quantities and prices that it can see that it pays for no more than went into the work, but the idea that it is to govern to the extent that each carload must be traced from the station to the sewer excavation, or that all the material used in the construction of the sewer must be identified as having come out of some particular car, is absolutely foreign to the merits of the case. In point of fact, we are reluctantly compelled to say that this case appears to have been tried on such extremely technical lines that we fear that justice and the right have been sacrificed to naked technicalities.

The point to be determined is very simple and easy of solution. Actual measurements if not made on the ground, can be made, to determine just how many feet of pipe and fittings went into the construction of these district sewers, so far as constructed by the defendant Byrne. The assistant city engineer did testify to measurements made and that they were made officially, and to determine that very fact. Objection was made to his testimony but the objection was properly overruled. We might, on the testimony in this record, enter up judgment here for the amount due, as is always within the power of this court, and as it was our first impression should have been done here. But lest we commit error as to amount or as to date from which interest should be allowed, we prefer not to do so. To repeat, we hold, and so determine for the reasons hereinbefore given, that the relator had a right to correct the credit of $2000, as entered in the first account filed as a credit to this account for material which entered into the construction of the district sewers, and apply the proportionate amount of that $2000 which covered the pipe, etc. furnished and which went into these district sewers.

That amount can easily be established by evidence. We accordingly reverse the judgment of the circuit court and remand the cause with directions to the circuit court to proceed in accordance with this opinion. All concur.

