GEORGE P. JOHANNES, Respondent, v. ST. REGIS REALTY & INVESTMENT COMPANY et al., Appellants.

St. Louis Court of Appeals, October 24, 1916.

1. **GUARANTY: Building Contracts: Construction of Guaranty: Matters Covered.** A guarantor of the performance of a building contract by the contractor is bound by the specifications referred to in the building contract, providing, *inter alia*, that the architect or owner should have the right, by written order, to order alterations and additions, leaving the price therefor, if not agreed upon, to be fixed by arbitration, notwithstanding the specifications were not mentioned in the contract of guaranty.

2. ———: ———: **Extra Work: Compliance with Contract: Burden of Proof.** Plaintiff, a materialman, brought suit to enforce a mechanic's lien. The owner filed a counterclaim, setting up that it had been compelled to spend a certain sum of money, in excess of the contract price, to finish the work, after the contractor had failed to do so, and that plaintiff was liable therefor under a contract by which he guaranteed the performance of the contract by the contractor. The building contract provided that the owner or the architect had the right, by a written order, to order alterations or additions to be made. It appeared that a large amount of extra work, not called for by the contract, was performed by the contractor, and the evidence as to whether or not such extra work was performed under a written order, conformably to the terms of the contract, was conflicting. Before the work was finished, the owner took the further execution and direction of it out of the hands of the contractor, and placed him on a *per diem* basis. Plaintiff contended that he was not liable under his contract of guaranty, for the reason that, in having the extra work performed without a

Johannes v. Realty & Investment Co.

written order and in placing the contractor on a *per diem* basis, there was a substantial variation of the contract, to his damage. *Held*, that, in order to establish its counterclaim, the burden rested upon defendant to prove that the extra work was ordered by a written order.

3. ————: ————: ————: ————: Sufficiency of Evidence. In such action, evidence *held* to support a finding that no written orders were given for the extra work as required by the contract, and that the doing of such work without such orders constituted a substantial variation of the contract, and hence plaintiff was not liable under his guaranty.

4. ————: ————: ————: ————: ————. In such action, *held* that the placing of the contractor on a *per diem* basis was a substantial variation of the contract, since its effect was to change the contractor from the position of an employer to that of a journeyman, and that the evidence was not sufficient to show that plaintiff had knowledge thereof, and hence it is *held* that plaintiff was not liable under his guaranty.

5. ————: ————: ————: Cases Distinguished. Lackland v. Renshaw et al., 256 Mo. 133, is distinguishable on the grounds, that the surety in that case was a corporation expressly organized to make bonds of suretyship for a consideration and a profit, and that the bond there involved was prepared by the surety company and was, under the general rules applicable in cases of that kind, to be construed most strongly against the drawer, neither of which conditions obtain in the case at bar; and that case, as well as City of Kirkwood ex rel. v. Byrne, 146 Mo. App. 481, is further differentiable on the ground that there, no damage resulted to the surety from the alterations, while here, the alterations were material and were prejudicial to the rights of the guarantor.

6. JUDGMENTS: Entry: Sufficiency of Order. Where the report of a referee recommended a finding for plaintiff on his claim, for a certain amount, and against defendant on his counterclaim, and after examining the testimony taken by the referee and hearing arguments on the exceptions filed by defendant, the court handed down a memorandum to the clerk, which merely contained the style and number of the case and the words "Report of referee approved," the judgment entered, conformably to the recommendation of the referee, could not be said to be the mere act of the clerk, since the order given to the clerk, embodied in the memorandum handed down by the court, was tantamount to the pronouncement of the judgment recommended by the referee and warranted the clerk in entering up the judgment in that form.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

AFFIRMED.

*Warwick Hough, Warwick M. Hough* and *Frank H. Braden* for appellants.

(1) The motion of the defendant to set aside the judgment *entered by the clerk,* for the reason that the memo. handed down by the court approving the report of the referee, did not authorize or warrant the clerk in entering up a judgment which had not been *rendered by the court,* should have been sustained by the court, and said supposititious judgment should have been expunged from the record. Decker v. St. L. S. Co., 92 Mo. App. 52; Pump Co. v. Jones, 126 Mo. App. 540; Freeman v. McCrite, 147 S. W. 1102. (2) The plans and specifications are part of the contract of the St. Regis Company with Walsh; they are made so by the contract itself, and they are twice alleged to be a part of the contract by Johannes in his reply to the answer of the defendant. Burk v. Kansas City, 34 Mo. App. 580; Evans v. Graden, 125 Mo. 79. (3) While the general rule is that a surety has the right to stand on the strict terms of his contract, this rule is applied in its fullness only to *voluntary sureties who have no interest in the subject-matter of the contract.* In the case at bar, Johannes, the guarantor, received a consideration for signing the contract, said consideration being the purchase from him by the contractor of all the material necessary to complete the plastering. Boppart v. Ill. Surety Co., 140 Mo. App. 675; Martin v. Whites, 128 Mo. App. 117. (4) In building contracts, where the contract itself authorizes additions, alterations or omissions, they may be made without affecting the liability of the surety, or guarantor, provided they are in substantial conformity with the requirements of the contract. The foundation of the rule is that the sureties consented in the first instance that alterations, omissions or additions might be made. Reissaus v. Whites, 128 Mo. App. 136.

*Seneca N. Taylor* and *J. W. Drabelle* for respondent.

(1) Any alteration in the terms of the contract by the principals without the consent of the surety dis-

charges the surety; and a material variation in the work contracted to be done without the consent of the surety will discharge him. Beers v. Wolf, 116 Mo. 179; Mallory Crawford Co. v. Brent, 75 Mo. App. 473; Warden v. Ryan, 37 Mo. App. 466; Killoran v. Meehan, 55 Mo. App. 427; Brewing Co. v. Hazen, 55 Mo. App. 277; Eldridge v. Fuhr, 59 Mo. App. 44; Bowman v. Heating Co., 80 Mo. App. 628; Swasey v. Doyle, 88 Mo. App. 536; Fullerton v. Gates, 89 Mo. App. 201; Chapman v. Endeberg, 95 Mo. App. 127; Burns Estate v. Fidelity & Dep. Co., 96 Mo. App. 467; School Dist. of Barfield v. Green, 134 Mo. App. 421; Beers v. Wolf, 116 Mo. 179. (2) The contention of the defendant that plaintiff, by reason of being surety for Walsh, is estopped from enforcing his mechanic's lien is untenable. Hartmann v. Berry, 56 Mo. 491; Hayden v. Wulfing, 19 Mo. App. 353; Burke v. City of Kansas City, 34 Mo. App. 570; Kamerick v. Castleman, 23 Mo. App. 487; Killoran v. Meehan, 55 Mo. App. 429; McAnow v. Ross, 53 Mo. 199; Emery v. Railroad, 77 Mo. 345; Brewing Co. v. Donnelly, 59 N. J. Law 48; Brewing Co. v. Clement, 59 N. J. Law 438; Zares v. Keck, 40 Neb. 456; Prescott Nat'l Bank v. Head, 90 Pac. 328.

REYNOLDS, P. J.—Action by the respondent Johannes, doing business as Banner Lime & Cement Company, to recover judgment against Peter Walsh for $992.10 and interest, and to establish it as a mechanic's lien against certain lots and improvements thereon, the lots being on the south side of Lindell boulevard near Kingshighway, in the city of St. Louis, the improvements consisting of a building known as the St. Regis Apartments. The account is for the plastering work done and for material furnished for it in the course of the work, the St. Regis Realty & Investment Company (hereafter for brevity called the St. Regis Company) then being the owner of the real estate and improvements thereon and Walsh contractor with that company, and the defendants Love and Dudley holding deeds of trust on the property, these executed to Dudley, as trustee for Love, by defendant Vrooman and wife, who at the time held and now

hold title to the real estate, the deed of trust executed, as averred, to secure money used for the building of the apartment house, and the rights of the Vroomans, Love and Dudley being subject, as it is charged, to the lien claimed by plaintiff.

The defendants Love and Dudley do not appear to have pleaded. Defendant Walsh, admitting that he was the contractor for doing the plastering, denies knowledge or information sufficient whereon to form a belief as to whether the account sued on by plaintiff is correct. The defendants Vrooman and wife admit that the St. Regis Company was owner of the property when the contract for the apartments was made but that they subsequently purchased and are now owners thereof. The St. Regis Company, after admission of formal matters and admitting that it was the owner of the premises at the time of making the contract for the apartments, denies plaintiff's claim and sets up a counterclaim for $7152.35 against plaintiff. The real controversy in the case arises over this counterclaim, there being practically no denial of the correctness of plaintiff's account and that the material there charged for went into the building and the work charged for was done on it and that the prices charged are reasonable, and proper steps taken to secure the lien.

As a foundation for this counterclaim, the St. Regis Company sets up its contract with Walsh, which is as follows:

"St. Louis, April 2, 1908.
"St. Regis Realty & Investment Co.,
"City.
"Gentlemen:
"I hereby agree to do all the plastering in the building to be erected by the above Company on Lindell boulevard, known as the St. Regis Apartments, complete throughout, with acme cement plaster, according to the plans and specifications, all for the sum of thirteen thousand, five hundred and fifty dollars ($13,550), payments to be made at the rate of 85 per cent. of contract including materials, as the work progresses.

"Said work to be done promptly when ready, and as many men put on as, in the judgment of the architect, can be properly worked.

"In case of strikes or other contingencies beyond his control, this contract is not binding until such contingencies are removed.

"[Signed]   PETER WALSH."

The St. Regis Company avers that it accepted this proposal or contract of Walsh, as part consideration for which it avers that contemporaneously with the signing of the contract by Walsh, plaintiff entered into this written agreement with this defendant, namely:

"St. Louis, Mo., Apr. 2, 1908.
"St. Regis Realty & Investment Co.,
   "City.
"Gentlemen:
"We hereby guarantee performance of the above contract, by the contractor, Peter Walsh, and agree to pay any sum or sums that may be due from any source by reason of his failure to complete said contract according to its terms and conditions.

"[Signed]   BANNER L. & C. Co.
"GEO. P. JOHANNES, Prop."

The St. Regis Company further avers that it had accepted Walsh's contract on the faith of this guaranty and that plaintiff had due notice thereof, and that thereafter Walsh, with the consent of plaintiff, entered upon the performance of the contract and had continued therein until about the first of December, 1908, and that on or about December 1, he (Walsh) failed to perform the contract, abandoned it without just cause, and failed to pay for the labor and material necessary to complete the contract, of all of which, it is averred, Johannes had notice, and that in order to complete the contract the St. Regis Company paid out for labor and material the sum of $7152.35 in excess of the contract price and that there still remains due to various parties for materials furnished for the erection of the house the sum of $1315.01, the amount paid out for labor and material and still re-

maining undue amounting in the aggregate to $8467.36. Judgment is prayed for $7152.35, with interest.

Except as to setting up the counterclaim the answer of the Vroomans, in addition to the matters before noted as in that answer, is on the same lines as that of the St. Regis Company.

Plaintiff filed replies to both of these answers which are substantially identical except as to that part of the St. Regis Company which deals with the counterclaim. As to that, plaintiff admits the execution of the contract set out between Walsh and the St. Regis Company and the signing by plaintiff of the guaranty as set out, and avers that he (plaintiff) held the relation of guarantor or surety for Walsh, and that after plaintiff became such guarantor or surety, the St. Regis Company and Vrooman, the beneficial owner of the property, without the knowledge or consent of plaintiff, made changes, alterations and deviations from the original contract on which plaintiff was guarantor, and deviations and departures in the execution of the work as called for in the plans and specifications, which were part of the contract, greatly enhancing the cost of the work to be done and which was actually done in plastering the building, such deviations, etc., it being averred, adding an additional cost to the plastering of the buildings of several thousand dollars. These changes and alterations and deviations are set out in great detail and it is averred that they were not included in the contract or specifications and that when many of them were ordered by the superintendent and vice-principal of the St. Regis Company, Walsh objected to them and informed those officers that the way the work was being done was an entire departure from the original plans and specifications and would make the cost of plastering many thousand dollars more than the agreed price to the hurt of his surety, and thereupon Claude E. Vrooman, vice-principal of the St. Regis Company, and then the beneficial owner and now sole owner of the apartment building, told Walsh to go ahead and that he would take care of him and his surety, and it is

196 M. A.—4

averred that each and every one of these changes, alterations and additions were made without the knowledge, consent, or assent of plaintiff and that the effect of them was to greatly increase the cost of the work and to exonerate, discharge and release him from his obligation as guarantor. It is further set out that shortly after Walsh had begun carrying out the contract on which plaintiff was surety, the St. Regis Company and Vrooman took the execution of the work out of the hands of Walsh, placed him on the payroll like any other journeyman on a basis of $6 per day, and continued to treat him as an ordinary journeyman on a basis of $6 per day and caused the work to be done under the direction and in pursuance of the orders and directions of Vrooman and the superintendent and foreman of the St. Regis Company without regard to the contract, plans and specifications, and treated the contract as of no force and effect. It is finally averred that in view of these many changes and alterations and in view of the fact that Walsh was not permitted to carry out the contract for which plaintiff became guarantor and surety, plaintiff was wholly discharged and released from any liability under his guaranty. He accordingly prays for judgment as in his petition.

The case was sent to a referee to hear and try all the issues and report his decision to the court. That referee found for plaintiff on the issues and recommended judgment in his favor for the amount of the debt and the establishment of it as a lien against the property described and found for plaintiff on the counterclaim of the St. Regis Company.

Defendants filed exceptions to the report which were overruled, the court in overruling them handing down a memorandum to the clerk giving the title of the cause, its number and the words "Report of Referee Approved." Thereupon judgment was entered in which it is set out that the exceptions to the report having been theretofore "submitted to the court upon the argument of counsel, and taken under advisement and the court having also seen and examined the said report, as well

as the transcript of the testimony and exhibits filed therewith, and being now sufficiently advised of and concerning the same," overruled the exceptions and approved the report and entered up judgment in favor of plaintiff for the sum of $1121.07, the amount found by the referee with interest from February 27, 1909, to date, that is March 27, 1911, together with costs, and establishing a lien and ordering execution against the property described, if sufficient property of Walsh was not found. Defendants thereupon and in due time filed a motion for a new trial, in which the first ground stated is that the judgment "entered by the clerk is not warranted by the memorandum filed by the judge of this division, which memorandum makes no reference to the eighteen exceptions filed to the report of the referee, nor to any one of said exceptions." The remaining exceptions to the action of the court in approving the report of the referee are on various grounds, thirteen in number, the last one being to the failure of the court "to sustain the eighteen exceptions, and each one thereof, filed by the defendant, the St. Regis Realty & Investment Company, to the report of the referee," and in further failing to set aside that report and make a finding of its own on the testimony. This motion was overruled and an appeal duly perfected to this court by the St. Regis Company and by Vrooman and his wife, the appeal being allowed to our court. We transferred the cause to the Supreme Court, being of the opinion that the amount involved was beyond our jurisdiction. The Supreme Court holding otherwise, transferred the cause back to us.

As this was a case of involuntary reference we have carefully and patiently read all of the testimony in the case as that testimony was sent up to the trial court by the referee. We avail ourselves of the report of the latter to a considerable extent, not however, putting what we use of that report in quotation.

Our conclusion, on our own examination of the testimony in the case is that the result reached by the referee is correct.

While the plans and specifications were in evidence they are not copied in the record. The paragraph of the specifications, however, which is copied and is most often referred to is as follows:

"The architect (or owner through the architect) may order any alterations, omissions, or additions of any kind which they may desire, giving orders therefor in writing, and the contract shall not be vitiated thereby, and no plea as to the acts, orders, directions or supervision of the architect or any person shall be submitted as the justification of any error of construction or departure from the architect's plans and specifications, etc. Should the architect and contractor fail to agree on the price of any work or materials added or omitted, then the said contractor shall proceed with the work upon order from the architect or owner and the price be left to arbitration in the usual way."

It appeared, virtually without conflict, that Walsh did a large amount of extra work not called for by the contract and amounting to $3185.15, but it will be seen that in its counterclaim the St. Regis Company does not ask judgment for this extra work as against plaintiff. It is claimed by the plaintiff that the extra work amounted to an alteration of the original contract and that that, as well as a large amount of changes which were made from the original specifications, was done without his knowledge or consent and hence released him from his guaranty. On the other hand, the St. Regis Company insists that these extras were ordered in writing and that the alterations and changes that were made in the work from that called for in the specifications were ordered in writing and in strict compliance with the clause of the specifications quoted and hence did not release the plaintiff. It was contended by the plaintiff that this clause was not binding for the reason that the specifications were not mentioned in his guaranty. As the referee found, and as we find, the guaranty of plaintiff is to the performance of the contract, and in that contract Walsh specifically agrees to do all the plastering in the building according to plans and specifications,

hence we think, as the referee found, that plaintiff is bound by the specifications, and that extras ordered and furnished in accordance with the specifications would not release him as guarantor.

As the principal contest at the trial was over this clause of the specifications, naturally the burden of proof was upon the defendant to establish its counterclaim and to prove, by the preponderance of evidence in the case, that the list of extras upon which its claim is founded had been ordered in writing. The testimony in regard to whether there were written orders given for extras or changes is absolutely irreconcilable. Mr. Vrooman, the architect, and possibly another witness, testifies that written orders for changes and extras were given to the superintendents who were actually in charge of the work and represented Walsh, but the architect admits that he gave no written directions of any kind as to alterations or extras to Walsh. One of these superintendents, Kearney, does not remember giving Walsh any written orders for changes, and Kearney was the superintendent directly over the plastering work as we understand the testimony. He further testified that Mr. Vrooman never directed him to make any written orders in regard to the plastering to Walsh; that the only written orders which had been given him were to another concern which had demanded written orders. The defendant Walsh testifies that he never received any written orders from anybody and that Mr. Vrooman, who was practically in the position of owner and appears to have supervised the whole work himself, never gave him (Walsh) any memorandum in writing to do one thing or the other outside of and not covered by the contract or specifications, nor did anybody representing Vrooman or the architect ever give any memorandum in writing for any one to give to him (Walsh) so far as he knew. The referee concludes on this that he is compelled to hold that the defendant St. Regis Company has failed to establish its counterclaim for the extra work. "For the extra work," says the referee, and it is contended as to this by the learned counsel for appellants that this is evidence that

the referee misconstrued the case and was taking into account extra work, no claim for which was made in the counterclaim. Reading the whole report of the referee, we do not understand that the referee fell into any mistake, even if he did use the phrase noted. The use of the phrase "for the extra work," applies not only to the extra work but to the changes and alterations that were made in the progress of the work from the specifications. Surely the doing of extra work, even if compensation is not demanded, was a substantial variation of the contract, the performance of which plaintiff guaranteed. As the referee found, and as we find, the provision in the specification quoted was intended to avoid the very controversy that is here presented by providing that any additions to or subtractions from the contract were required to be ordered in writing and the price agreed upon before the work was done, and in no instance did that occur. In addition to this it appears that the provision of the contract that 85 per cent. of the cost was to be paid Walsh as the work progressed was abandoned and Walsh placed on a per diem of $6.00 and treated as a journeyman. Defendant claims that plaintiff knew of this change but plaintiff denies this. That was a very material alteration, and we think that the evidence as to plaintiff's knowledge of it is not sufficient. Its effect was to change Walsh from the position of an employer and responsible overseer to that of a mere journeyman or foreman.

Upon the whole testimony we think plaintiff established the averments of his reply to the counterclaim.

But it is said that plaintiff was a guarantor for hire or on a valuable consideration, and unless it appeared that he was damaged by the change in the plans and specifications and by the doing of the extra work, he is not released.

The decision of our Supreme Court in Lackland v. Renshaw and American Surety Company of New York, 256 Mo. 133, 166 S. W. 314, is cited by learned counsel for appellants in support of their claim that plaintiff here, being a hired surety, one on a consideration, that the

doctrine of *strictissimi juris* does not apply to him. It· is true that it was so held, on its facts, in the Lackland case, supra. In City of Kirkwood ex rel. v. Byrne, 146 Mo. App. 481, 1. c. 497, 125 S. W. 810, we announced practically the same rule, holding in that case that we did not think the surety was in any way injured by the change, which there was a mere change in the book-keeping account.

We do not think that the decisions in either of the above cases meet the case 'at bar. This for several reasons: In the first place the surety in the Lackland case was a corporation, expressly organized·and engaged in the business of making bonds of suretyship for a consideration and for a profit. In the next place the bond there involved had been drawn up by the surety company and was, on the general rules always applicable in cases of that kind, to be construed most strongly against the drawer. In that case as also in City of Kirkwood v. Byrne, supra, no special damage was shown by reason of the alterations. Here the fact that the changes made involved a large addition in the work to be done and the cost of the material substituted for that called for in the specifications, is here present, an element bound to increase the cost of the work beyond that which the guarantor or surety here had contracted for. The change from the 85 per cent basis to the per diem and placing Walsh on the footing of a journeyman laborer instead of that of a contractor, was material. Again, in the case at bar, while there is some evidence that plaintiff wrote himself as guarantor or surety on the consideration that all of the material required in the plastering was to be purchased from him, although this is not clearly proven, the evidence shows that a large amount of the cement which went into the construction of the building was not purchased from plaintiff, who so far as appears was able to furnish it if demanded, but was purchased from other parties, was not acme cement but an entirely different kind, and at a greatly enhanced cost over and above that of the acme cement, which was called for in the specifications.

Without going further into the matter, as before remarked, our conclusion is that the report of the referee and the conclusion arrived at by him and adjudged by the court, are correct.

But it is assigned for error and argued that the learned trial court, in point of fact, never entered any judgment in the case and that the judgment as entered up was the act of the clerk and not of the court. We cannot accede to this proposition. The learned trial court, it is true, and as before stated, handed down a memorandum to the clerk which merely gave the name of the case, its number, and the words, "Report of Referee Approved." But the record as in the abstract and in "the short form," both filed with us by appellants, show conclusively that the testimony which had been taken by the referee was before the learned trial judge; was examined by him; that his report was before the court and exceptions filed to it; that argument was heard by him, the case taken under advisement and then the report approved. The referee distinctly recommends the entry of a judgment in favor of plaintiff on his account and that the amount so found is entitled to stand as a lien against the property described. He further recommends a finding for plaintiff and against the counterclaim of the St. Regis Company. The order given to the clerk, embodied in the memorandum handed down by the court to the clerk, was tantamount to the pronouncement of the judgment recommended by the referee and warranted the clerk in entering up the judgment in form.

We see no reversible error to the prejudice of the appellants. The judgment of the circuit court is affirmed. *Allen, J.,* concurs.