ELLA L. WIGGINS ET AL. v. MARY LOIS PERRY ET AL., Appellants.—
119 S. W. (2d) 839.

Division One, September 17, 1938.*

---

*NOTE: Opinion filed at September Term, 1936, November 12, 1936; motion for rehearing filed; motion overruled at September Term, 1937, November 23, 1937; motion to transfer to Court en Banc filed and overruled December 14, 1937; motion to modify opinion and recall filed; motion overruled at September Term, 1938, September 17, 1938.

*Paul Bakewell, Jr.,* for appellants.

*Nagel, Kirby, Orrick & Shepley* for respondents.

BRADLEY, C.—This appeal is from an order of the Circuit Court of St. Louis refusing to correct, *nunc pro tunc*, a judgment by said court. For opinion affirming the judgment in the original cause, see Wiggins et al. v. Perry et al. (Mo.), 271 S. W. 815. The original suit was to construe the will of John E. Liggett who died November 23, 1897, and the opinion referred to sets out the parties there concerned, three of whom only are concerned here, viz.: Ella L. Wiggins, Mary Lois McIntosh (formerly Perry) and Elizabeth Liggett Kennard (formerly Scudder). Testator left surviving him three daughters, Cora B. Fowler, Dolly L. Kilpatrick and Ella L. Wiggins. Cora B. Fowler died without issue July 19, 1928, and Dolly L. Kilpatrick died August 10, 1928, leaving a daughter, now Mary Lois McIntosh, and a granddaughter, now Elizabeth Liggett Kennard, who is the daughter of a deceased daughter of Dolly L. Kilpatrick. Mary Lois McIntosh and Elizabeth Liggett Kennard are the movants in the motion for the *nunc pro tunc* order, and Ella L. Wiggins opposes. We shall refer hereinafter to the proponents of the motion as the movants and to Ella L. Wiggins as respondent for the most part.

In the will construction suit, respondent and her two sisters, Cora B. Fowler and Dolly L. Kilpatrick, contended that by the terms of the will they took the fee in the property devised to them, while on the other hand, it was contended that the three daughters took only a life estate. In the first clause of his will, testator directed the pay-

ment of debts, funeral and administration expenses. In the second clause he made certain bequests to his wife (who died May 15, 1909) in lieu of statutory allowances. In the third clause he devised to his three sons-in-law certain stock in the Liggett & Myers Tobacco Company and of the Liggett Realty Company, and all his real estate and all cash, bonds, notes, coupons, stocks of other companies and corporations, and all other property not otherwise disposed of by the will—

"In trust, nevertheless, for the following uses and purposes, that is to say, to promptly pay over to my said wife, Elizabeth J. Liggett, for and during the term of her natural life, and in lieu of all dower in my estate, all rents, profits, earnings, income and dividends made and declared on my said stock of the said Liggett Realty Company, as and when the same shall at any time be received from said company by my said trustees.

"After the death of my said wife then my said stock of the Liggett Realty Company shall be further held by my said trustees under this trust for the sole benefit and behoof of my daughters, Dolly L. Kilpatrick, wife of said Claude Kilpatrick, Cora B. Fowler, wife of John Fowler, and Ella D. Scott, wife of said Mitchell Scott, to their sole and separate use, free and clear of an estate by curtesy, interest, or control of this said present or any future husband of them, or either of them, for and during the natural lives of my said daughters in equal portions, share and share alike, with remainder over as to the undivided share aforesaid, of each one, to the heirs of the body of each one of my said daughters as their absolute property, *per stirpes* and not *per capita*; but should any of my said daughters *die without issue* then *her portion* of said realty company stock herein bequeathed to her for life shall go to the *survivor and survivors* of my said daughters in equal portions for life, with remainder over, as to such portion, to the heirs of the bodies of such as shall dies leaving issue of their bodies absolutely, share and share alike, *per stirpes*." (Italics ours.)

The judgment of the circuit court was rendered, according to respondent's contention, June 22, 1923, but according to the contention of movants, the judgment was rendered December 30, 1921. The portion or part of the judgment actually entered by the clerk on the judgment record, and now sought to be corrected, is as follows:

"And it is further adjudged and decreed by the court that upon the death of said Cora B. Fowler, said property shall go to and vest absolutely, *per stirpes* and not *per capita*, in her then surviving issue, if any; but *in* default of such issue, then said property shall go as follows:

"(1) If *both* her sisters, Ella L. Wiggins and Dolly L. Kilpatrick shall survive her, then an undivided one-half interest in said property shall go to and vest in each of said sisters for her life, and on the death of either of them, the undivided one-half interest therein of the

one so dying shall go to and vest *in* the survivor for her life, and upon her death the whole of said property shall go to and vest absolutely in the then surviving issue of said Ella L. Wiggins and Dolly L. Kilpatrick, share and share alike, *per stirpes* and not *per capita*." (Italics ours.)

The correction sought by movants is the elimination of all that portion in paragraph (1) last above after the italicized word *in* and insert in lieu thereof the words, "the heirs of her body," so that paragraph (1) when so corrected will read:

(1) "If both her sisters, Ella L. Wiggins and Dolly L. Kilpatrick, shall survive her, then an undivided one half interest in said property shall go and vest in each of said sisters for her life, and on the death of either of them, the undivided one half interest therein of the one so dying shall go to and vest in the heirs of her body."

The decree, as entered on the judgment record by the clerk, contained identical provisions respecting Ella L. Wiggins and Dolly L. Kilpatrick, should they die without issue, as set out above concerning Cora B. Fowler.

The original cause was tried by Judge Franklin Miller, and was argued and submitted on December 17, 1921, and on December 30, 1921, there was placed in the files and stamped filed by the clerk the following memorandum:

"Finding by the court construing the will of John E. Liggett, deceased, to the effect that the plaintiffs take life estates only under said will, with contingent remainders over in favor of the heirs, if any, of the bodies of plaintiffs respectively, *per stirpes* and not *per capita*; counsel for defendants to draft form of decree; decree to be entered upon said draft when approved by court and filed.

(Signed)　　　　　　　　　　Franklin Miller, Judge."

There was no minute of judgment upon the minute record of the clerk or upon the judge's docket at the time the memorandum was filed. Nothing further appeared in the cause until January 19, 1923, at which time suggestion was made of the birth of a granddaughter of Ella L. Wiggins, respondent here, and upon this suggestion the submission, on December 17, 1921, was set aside, the recently born granddaughter made a party defendant by interlineation amendment of petition, and process ordered and to be served returnable to the February Term, 1923. Process was served and a guardian *ad litem* was, in due course, appointed for the new defendant and filed answer. The record of June 22, 1923, recites that plaintiffs (the three sisters) filed reply to the answer of the new defendant and that the "court proceeded to hear evidence, cause submitted, draft of decree (in question here) filed." Then followed the appeal to this court. The next entry in the cause in the circuit court record was March 16, 1925, at which time there was written on the record, "Judgment affirmed." March 16, 1925, was date when the opinion by this court

was handed down. April 27, 1925, the circuit court record shows "mandate and opinion filed."

Movants, as stated, contend that the final *judgment* in the original cause was *rendered* December 30, 1921, when the memorandum was filed, and that the cause was not thereafter *under submission*. The appeal was at a term subsequent to the filing of the memorandum and if movants' view be accepted, then manifestly, there was no valid appeal to this court and no authoritative opinion by this court. Under our practice an appeal must be taken, if at all, during the term at which the final judgment is rendered. [Sec. 1020, R. S. 1929, Mo. Stat. Ann., sec. 1020, p. 1295.] There was nothing on the record showing that a judgment was rendered December 30, 1921, and such being so, the will construction suit rode under advisement, as usually expressed, until the submission was set aside January 19, 1923. We, therefore, consider movants' motion for the *nunc pro tunc* order on the theory that whatever judgment or decree was rendered, was on June 22, 1923.

Respondent here contends that movants are in no position to challenge the decree of the circuit court in the will construction suit. On this point it is contended: (1) That movants (of parties defendant in the will construction suit) had the right to make the same contention in that suit, concerning the construction of the will, as made in the motion for the *nunc pro tunc* order, but did not do so, and not having then made such contentions movants are estopped and precluded from now attacking the decree; (2) that movants had the right to appeal from the construction of the will as appears in the decree, but did not do so, and are therefore bound by the construction of the will in the decree; (3) that this court was not wrongly or inadequately informed (a contention made by movants) by counsel (for plaintiffs and defendants in the will construction suit) concerning that part of the decree here in question; (4) that movants, between the time of the affirmance of the decree in the will construction suit, and the filing of the motion for *nunc pro tunc* order, have filed, against respondent, separate suits, one (by movant, McIntosh) in the Federal Court at St. Louis, and the other (by movant, Kennard) in the Circuit Court of St. Louis, both of which suits attack the decree in question "on various grounds including the contention that the circuit court erroneously held the surviving sisters of Mrs. Fowler to have successive life estates in the Fowler share, and that because these suits are pending, movants are precluded from relief on their motion; (5) that movant McIntosh, on February 20, 1930, brought suit in the Federal Court at St. Louis, against respondent to determine title to the Cora B. Fowler share under the will, making the same contentions as are made in the motion as to the construction of the will, and that in that suit, it was held that the petition in the will construction suit "warranted the decree rendered" and

that said decree was *res adjudicata;* (the Federal case was appealed and the judgment affirmed on a question of procedure, 57 Fed. (2d) 622); and (6) that movants are estopped because they "stood by inactive" after the affirmance of the will construction decree by this court and permitted distribution in accordance with the decree.

All these contentions by respondent are beside the point. Movants, in the motion for the *nunc pro tunc* order, make no claim that they are not bound by the *decree,* and no innocent third person is involved, as might be implied from the sixth contention. There could be no place for such contention by movants in such a motion. Their contention is, and they so state in their brief, that the decree or judgment as entered is "not the judgment which was rendered" by the circuit court, and is not the judgment affirmed by this court. In effect, movants contend that the judgment of the circuit court and the one affirmed by this court, construed the will to mean that upon the death of Cora B. Fowler, without issue, her share passed to the two surviving sisters in equal proportions for life, and that upon the death of Dolly L. Kilpatrick, the portion of the interest of Cora B. Fowler that passed to Mrs. Kilpatrick upon the death of Cora B. Fowler, passed to movants and not to respondent, Ella L. Wiggins, for her life, and *then* to movants, as the decree, entered of record, construes.

Movant Kennard was, at the time of the will construction suit, a minor and was represented in said suit by her guardian *ad litem,* Charles S. Reber, a lawyer. Mr. Reber, in his answer for his ward, alleged:

"Further answering said petition this defendant states that Ella L. Wiggins, Cora B. Fowler and Dolly L. Kilpatrick, daughters of said testator, John E. Liggett, are given by his said will a life estate only in the share of his estate thereby devised and bequeathed to each, with remainder over in fee upon the death of said daughter to her then surviving issue, *per stirpes* and not *per capita;* and, in case there be none (surviving issue), with remainder as to said share to the survivor or survivors of said daughters in equal portions for life, with remainder over in fee upon the death of the last survivor of said daughters to the surviving issue of said daughters, share and share alike, *per stirpes.*"

So it appears that the guardian *ad litem* of movant Kennard placed the same construction upon the will, in his answer, as appears in the decree. It also appears (from oral evidence) that Mr. Reber prepared the decree that was entered upon the circuit court record. Movant McIntosh, although duly served with process in the will construction suit, made no appearance.

"A *nunc pro tunc* judgment, at a subsequent term, can only be made upon evidence furnished by the papers and files in the cause, or something of record, or in the clerk's minute book, or on the

judge's .docket.'' [Burnside v. Wand, 170 Mo. 531; l. c. 543, and cases there cited, 71 S. W. 337, 62 L. R. A. 427; Clancy v. Luyties Realty Co., 321 Mo. 282, 10 S. W. (2d) 914; State ex rel. Holtcamp v. Hartmann et al., Judges, 330 Mo. 386, 51 S. W. (2d) l. c. 25.] "A *nunc pro tunc* entry can only be employed to correct a clerical mistake or misprision of the clerk.'' Such an entry cannot be invoked to ''correct a mistake or oversight of the judge, nor be used to correct judicial errors, nor to render a judgment different from that actually rendered, even though the judgment actually rendered was not the judgment the judge intended to render.'' [Burnside v. Wand; Clancy v. Luyties; State ex rel. v. Hartmann, supra.]

In order to justify correction of the decree in the will construction suit as contended for by movants, there must be support therefor from the pleadings, or from the record of the decree, or from the clerk's minutes, or from the minutes or notations kept by the judge on his docket, or from some proper paper or file in the case. In some situations the opinion and judgment of this court constitute the mandate. [Pickel v. Pickel, 251 Mo. 197, l. c. 208, 158 S. W. 8; Keaton v. Jorndt, 259 Mo. 179, l. c. 190, 168 S. W. 734. See, also, State ex rel. McGrew Coal Co. et al. v. Ragland, 339 Mo. 452, 97 S. W. (2d) 113.] The mandate (or what is commonly called the mandate) of this court in the will construction suit recites:

''Now at this day come again the parties aforesaid, by their respective attorneys, and the court here being now sufficiently advised of and concerning the premises, doth consider and adjudge that the judgment aforesaid, in form aforesaid, by the said Circuit Court of the City of St. Louis, rendered, be in all things affirmed, and stand in full force and effect; and that the said respondents recover against the said appellants their costs and charges herein expended and have therefor execution. (Opinion filed.)''

It must be conceded that if support for the motion for the *nunc pro tunc* correction exists, it must be in the memorandum and the opinion by this court. There is certainly nothing on the judgment record or in the clerk's minutes or on the judge's docket to support the *nunc pro tunc* correction sought. As already stated, the memorandum was stamped filed December 30, 1921, but no minute entry of its filing appears of record, while the challenged decree was filed June 22, 1923, and its filing entered of record. However, we think that this memorandum may be considered (for whatever it is worth), under the situation obtaining (Johannes v. St. Regis Realty & Inv. Co., 196 Mo. App. 43, 188 S. W. 1138), along with the opinion by this court. The question then is: Does the mandate of this court, considered with the memorandum, constitute such record and files as will support the *nunc pro tunc* correction sought? We might state that the memorandum was not found in the files of the will construction suit; by counsel for movants; until late in December, 1932,

or early in January, 1933, and not until the final disposition of the case reported in 57 Fed. (2d) 622, and not until after the filing of the two suits above mentioned and now pending, one in the Federal Court at St. Louis, and one in the Circuit Court at St. Louis.

It will be noted that this court, in what is commonly called the mandate, adjudged that "the judgment aforesaid, in form aforesaid, by the said Circuit Court of the City of St. Louis, rendered, be in all things affirmed, and stand in full force and effect." There can be no doubt about *what judgment* is referred to in the mandate, or what is commonly called the mandate. There was only one judgment in the will construction suit before this court, and that was the judgment of the circuit court of June 23, 1923. The memorandum construes the will "to the effect that plaintiffs (the three sisters) take life estates only under said will, with contingent remainders *over* in favor of the heirs, if any, of the bodies of plaintiffs respectively, *per stirpes.*" The opinion by this court, 271 S. W. l. c. 822, reads: "With these objects in view, he (testator) placed his entire residuary estate in the hands of his three trustees, with ample powers of management, and with specific directions to pay over the income from a designated portion of the trust estate—i. e., from his Liggett Realty Company stock—to his wife, 'for and during the natural term of her life,' and after her death to hold said stock in trust 'for the sole benefit and behoof of my three daughters, in equal portions, share and share alike, for and during the natural lives of my said daughters, with remainders over to the heirs of the bodies of each of my daughters, as their absolute property, *per stirpes* and not *per capita;*' if no issue, then to pay the income from such share to his surviving daughters or daughter 'for life,' 'with remainders over, as to such portion, to the heirs of the body of such as shall die leaving issue of their bodies absolutely, share and share alike, *per stirpes.*' "

And quoting (and apparently adopting) from the brief of Mr. Reber in the will construction suit the court (271 S. W. l. c. 826) said: "We therefore respectfully submit that the will of John E. Liggett, construed according to its true intent and purpose, creates life estates only in his daughters, with contingent remainders over in the heirs of their respective bodies, and that the lineal descendants only of each daughter who answers the description of such heirs at the time of her death take such remainders, and that the trial court was clearly right in so ruling."

Then again the court says, quoting and adopting from brief of counsel (Mr. Reber): ". . . should any of his daughters die without issue 'then her portion,' not of income, as counsel (for the three sisters) would have the court believe, but 'of said realty company stock herein bequeathed to her for life shall go to the survivor and survivors of my said daughters in equal portions for life, with remainders over, as to such portion, to the heirs of the bodies of

such as shall die leaving issue of their bodies absolutely, share and share alike, *per stirpes.* . . ." [271 S. W. l. c. 826, 827.]

■ The decree, in the will construction suit (set out in the present record), covers fifty-three pages, and covers: many subjects not mentioned in the memorandum. Movants, in their brief, refer to this memorandum as *the judgment* of the trial court. It is apparent that no one could have prepared a decree covering the issues and questions involved from the memorandum. It is not our province to *construe* the will. The only question here for our determination is whether or not movants are entitled to have the will construction decree corrected by a *nunc pro tunc* order. Considering the opinion and the memorandum together there may be isolated expressions in the opinion tending to support the construction contended for by movants, but from the opinion, it is clear that the court was at no time attempting to specifically rule as to whether or not the interest of a daughter dying without issue, would pass to the surviving daughters successively for life, and would not pass to the possession of the surviving issue of a deceased daughter until the death of the last daughter. The chief question before the court was whether the three daughters took a life estate or a fee. As we have pointed out, supra, a *nunc pro tunc* order cannot be invoked "to correct a mistake or oversight" of the judge, nor to correct judicial error, nor "to render a judgment different from that actually rendered, even though the judgment actually rendered was not the judgment the judge intended to render."

It is our conclusion that the judgment of the trial court denying correction, *nunc pro tunc,* of the judgment in the will construction suit on the motion of movants should be affirmed, and it is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.