Bess ELGIN (Plaintiff), Respondent,

v.

Peter C. ELGIN (Defendant), Appellant.

No. 29655.

St. Louis Court of Appeals.
Missouri.

May 7, 1957.

Victor Packman, Irl B. Baris, St. Louis for appellant.

Cuddy & Donnelly, Edward C. Donnelly, St. Louis (Paul E. Fitzsimmons, Clayton, of counsel), for respondent.

WOLFE, Commissioner.

This was started as an action for divorce by the plaintiff, wherein the defendant also sought a divorce upon a cross bill. The plaintiff dismissed her petition and a decree was awarded to the defendant. As originally entered the decree gave custody of a child born of the marriage to the plaintiff and provided that the defendant should pay to the plaintiff the sum of $12.50 a week for the child's support. In addition to this the original decree awarded $7.50 a week alimony to the plaintiff. This order was amended on the court's own motion, striking out the award of alimony and raising the sum awarded for the support of the child to $75 per month. The defendant then moved the court to set aside the decree as it related to the award of support money and the plaintiff moved for a new trial upon all issues. The court sustained both motions and the defendant has appealed.

The trial court specified no ground upon which it granted a new trial to the plaintiff, and in accordance with Supreme Court Rule 1.10, 42 V.A.M.S., the defendant, appellant, served on the plaintiff, respondent, a statement making this allegation of error and requiring the plaintiff to assume the burden of supporting the court's action.

The evidence, about which there is no dispute, shows that the defendant, a man 45 years of age, and plaintiff, 35 years of age, were married on June 13, 1954. Their wedding was a Greek Orthodox ceremony and both were members of that religious denomination. The wedding was followed by a honeymoon trip to Niagara Falls and upon their return to St. Louis they moved to a home that the defendant had purchased.

The defendant was a bartender and had been in that occupation prior to his marriage. He worked during the daytime except for two days a week when he did night work. His day hours were from 10:00 or 11:00 a.m. until 6:00 or 7:00 p.m., and when he worked nights he quit at 2:30 a.m. and got home at about 3:15. The bar at which the defendant worked was owned by a corporation which paid him $50 a week for his work as a bartender. The defendant had a lease on the premises where the bar was located and sublet to the corporation

for $200 a month. His total income was about $400 a month.

The defendant charged in his cross bill indignities and desertion. In support of these charges he testified that his wife visited her relatives with considerable frequency. He said that he did not believe that a single day passed without one of her sisters being in the house. He also testified that she was argumentative and used improper language toward him. He stated that she carried tales of any arguments that they had to her father and that her father attempted to interfere. Around August his wife became pregnant but told him she did not want "to have babies". On September 3, 1954, he arrived home about 7:00 p.m. and around 8:00 or 8:30 his wife came in with her sister and her sister's son. They entered without speaking to him and went into the living room and turned on the television. He called his wife into the kitchen and asked her what the occasion for her sister's visit happened to be. His wife became angry and said that her sister and her son were going to stay there. He objected to this but to avoid any argument he left the home. He returned a short time later and found that they had all left and he did not see his wife again until the 31st of October when she returned with two members of her family and a stranger to collect some things that she wanted. She proceeded to take all of the wedding presents that they had received and also some silverware that belonged to the defendant's uncle. Shortly prior to this he was informed that his wife had filed a suit for separate maintenance. He did not seek out his wife at her parents' home because his father-in-law had threatened him, but he sought to bring about a reconciliation through mediators, such as mutual friends. This was to no avail. He sent plaintiff a check for $100 and told her in a letter that he would like to have a private talk with her but this brought no results.

One of the friends that he sent to Mrs. Elgin testified that he found her angry and hostile toward her husband. He related

that she said she wanted nothing to do with the expected child and that she would leave it at the hospital or put it in a home when it was born.

The defendant was not informed of the birth of the child or that his wife was in the hospital expecting it but learned of this when a friend called him by phone to find the name of the child's paternal grandfather for the purpose of filling out the birth certificate. The defendant then called at the hospital to see his wife and child and sent her flowers. She left the hospital and returned to her father's home. She never consulted her husband about naming the child and she had the child christened without informing him, although members of her family were present at the ceremony. She never returned to her husband and she stated that she wanted no reconciliation.

Plaintiff testifed that her husband would drink after he came home at night and come to bed late and smoke. They both smoked and drank but after she became pregnant the smell of liquor annoyed her. She related an incident that happened on their honeymoon when she took $10 from her husband. When he missed the money she returned it to him and he burned the ten-dollar bill in anger. She stated that after she had removed her belongings she returned once to her home and found padlocks on the doors but she stated her return was not with the intention of staying. As to the visit of her sister she said that her sister was going to stay at her house to take care of her during her pregnancy. There was, however, evidence that the sister lived in back of a barber shop that was being painted and wanted to move to get away from the odor of paint. The sister who testified on behalf of the plaintiff was asked if this was not the reason for her attempt to move in with the defendant and she replied: "It wasn't, I could have went to my mother's house and stay there."

The foregoing constituted all of the evidence of any consequence and it was upon this that the court granted the defend-

ant a decree, and then, without specifying why, granted plaintiff's motion for a new trial.

■ The court erred in failing to specify of record the ground or grounds upon which it granted plaintiff a new trial. Section 510.330, RSMo 1949, V.A.M.S., provides that the trial court shall specify the ground upon which a new trial is granted, and Supreme Court Rule 1.10 supplements that section by declaring that when a trial court grants a new trial without specifying of record the ground or grounds upon which the new trial is granted "the presumption shall be that the trial court erroneously granted the motion for new trial". The rule also provides that when a trial court so acts "it shall never be presumed that the new trial was granted on any discretionary grounds".

■ The burden here is upon the plaintiff, respondent, to support her motion as this is also provided by the rule. Hammond v. Crown Coach Co., 364 Mo. 508, 263 S.W. 2d 362; Drake v. Hicks, Mo., 261 S.W.2d 45; Young v. Hall, Mo.App., 280 S.W.2d 679; Willis v. Willis, Mo.App., 274 S.W.2d 621.

■■ The plaintiff seeks to justify the action of the trial court upon the ground that the evidence failed to support the decree. It is first asserted that the evidence established that the defendant was not the innocent and injured party. This contention is not sustained by the facts. A party to a divorce action is not deprived of his status as an innocent party simply because his conduct has not been perfect at all times. Before one is prevented from being adjudged the innocent party his or her conduct must have been such as to entitle the other spouse to a divorce. Simon v. Simon, Mo., 248 S.W.2d 560; Rowland v. Rowland, Mo.App., 227 S.W.2d 478; Cadenhead v. Cadenhead, Mo.App., 265 S.W.2d 426. The complaints here made about the defendant's conduct are most trivial in nature. If we assume that all

that the plaintiff said about the defendant was true, she would not have been entitled to a divorce and consequently he is the innocent party. Most of her complaints had to do with the fact that he drank beer when he came home late at night. Prior to her pregnancy she had also drunk and smoked, so his conduct in this respect she knew about, joined in, and accepted. She at no time stated that he became intoxicated.

■ Plaintiff also contends that she was not guilty of desertion in that she had cause to leave her husband. What we have said above disposes of this. The only cause she had was her own desire to get away and be with her family for which she seemed to have had an inordinate degree of devotion.

From the foregoing it must be concluded that the plaintiff has failed to support upon any ground the action of the trial court in sustaining her motion for a new trial.

■ As stated, the defendant moved for a new trial on the issue of support money only. This motion was upon the ground that there was no basis on which the court could make the award it made by amending the original decree. This is certainly true. There was no evidence before the court as to the cost of maintaining the child and the award of $75 per month appears excessive in the light of the child's age and the defendant's income in the absence of any testimony indicating the need of more than customary expenses for the child's care. Under Section 510.330 the court had a right to grant a new trial as to this issue.

For the reasons stated, it is the recommendation of the Commissioner that the decree of divorce granted the defendant be reinstated and the cause be remanded for a new trial only on the issue of support money for the child.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The decree of divorce granted the defendant is accordingly reinstated and the cause remanded for a new trial in accordance with the recommendation of the Commissioner.

RUDDY, P. J., and MATTHES and ANDERSON, JJ., concur.