**Hugh L. FORREST, Appellant,**

v.

**Amond Florene FORREST, Respondent.**

**No. KCD 26381.**

Missouri Court of Appeals,
Kansas City District.

Dec. 3, 1973.

Michael J. Albano, Independence, for appellant; Graham, Paden, Welch & Martin, Independence, of counsel.

Norman Humphrey, Jr., Independence, for respondent; Burns & Humphrey, Independence, of counsel.

Before DIXON, C. J., and PRITCHARD and SOMERVILLE, JJ.

PER CURIAM:

Appeal from a judgment of divorce and alimony awarded upon the respondent-wife's cross-petition. As grounds for divorce, each party asserted general indignities with allegations of specific instances of abuse. The judgment of divorce granted respondent alimony of $200.00 a month. There were no children born of the marriage.

Three points of error are asserted as abuses of the court's discretion in overruling appellant's motion for new trial. It is contended the weight of evidence established: 1) Appellant as the innocent and injured party; 2) that respondent was not entitled to alimony by reason of her youth, health, sizable personal estate with little financial indebtedness, ability to follow gainful employment, and unsatisfactory marital conduct; 3) that even if respondent was entitled to alimony, the alimony accorded was excessive for substantially the same reasons as above.

The testimony elicited at trial discloses the marriage was celebrated on September 30, 1962. Virtually all material facts affecting the grounds for divorce between the parties are substantially disputed.

At the time of the marriage ceremony appellant was employed as an executive airline pilot earning $800.00 per month. Respondent had been employed as an airline hostess but resigned when the parties were married. Appellant brought a two-year old automobile and several hundred dollars in cash to the marriage. Respondent contributed a substantial amount of household goods, worth "several thousand dollars", $3,500.00 in cash, $2,000.00 worth of silver and approximately $2,000.00 in jewelry.

At trial, appellant contended conflicts immediately arose between the parties; that respondent demanded an expensive wedding ring and an expensive honeymoon in the Caribbean. Respondent denied that those obligations were undertaken upon her insistence. For four and a half years, the parties made their home in a one bedroom apartment in Flushing, New York, awaiting the opportunity to purchase their own home. During this time appellant provided $125.00 a month for maintenance of the household.

Respondent returned to work in 1963 for her former employer as a stewardess. To return to work, she had to lie to her employer that she was divorced. Respondent, until July, 1967, when, in order to retain her job, moved to California, was employed only part-time and remained with her husband. Respondent's income during this period and unemployment compensation when she was not working were placed in a savings account, to be used when the parties could afford their own home.

On April 17, 1967, the parties moved into a $42,500.00, ten room home, located on 2½ acres in New Town, Connecticut. The home was jointly owned by the parties. Appellant testified that during the period between the wedding and purchase of the home, the parties argued frequently over the type, size, and price of home the parties could afford. An earlier attempt to purchase a home in New Jersey was unsuccessful because of respondent's alleged refusal to accept a "development" home. Respondent spent $3,500.00 on the Connecticut home to modify the house to conform to her wishes.

Respondent countered that her husband was responsible for the decision to build the home in Connecticut, rather than buy one in New Jersey. Also, she testified that the expenditure of $3,500.00 of her own money was for bathroom improvements, not for a "Southern Style" colonnaded veranda. Respondent further denied that she had insisted on completely furnishing the home when the parties moved in, rather than gradually adding a piece at a time.

The parties furnished the home with the furniture from their Flushing apartment. Only $200.00 worth of additional furniture has been purchased for the home. All expenses of the home, mortgage payments, insurance, utilities, etc., have been paid by appellant. Respondent received $200.00 a month to maintain the house, until she left to work in California.

The respondent is the sole owner of two acres of property adjacent to the Connecticut home. The property was purchased for $4,000.00. Payments from joint funds of approximately $1,500.00 have been made leaving a mortgage balance of approximately $2,500.00. Respondent testified that she did not know the current value of the property.

Appellant admitted that since his wife moved to California in July, 1967, he has ceased providing her with the $200.00 to support the household. However, since that June, each of the parties had been contributing $200.00 a month into a savings account to purchase furniture. Also, during this period respondent had received

from appellant sums of cash totaling $2,000.00.

Following the move to California, respondent returned to the Connecticut home for visits of varying lengths of time— three times in 1967, six times in 1968 and 1969, and thirty days in 1970. Sometimes respondent's returns were financed from her own funds, and on other occasions she used airline "passes" supplied by appellant, who had become a pilot for TWA. During respondent's tenure in California, appellant maintained the home, doing the cooking, cleaning, washing, etc. Appellant testified that he objected to her move to California. He never told her she could· not go but believed his "feelings" were known to her. Respondent contended she went with his "utter blessing".

Appellant related other indignities which he allegedly suffered; respondent voiced objection to most of his friends, dislike for his parents, disgust with appellant, and dissatisfaction with their standard of living.

The evidence favorable to respondent was that their sexual life was less than satisfactory. Appellant admitted that his sexual affliction affected their relations approximately 75% of the time. He also admitted consulting a marriage counselor and a psychiatrist for his problem. These efforts were briefly successful until he terminated the counseling. Appellant stated he was willing to accept 50% of the blame for his poor sexual performance. Appellant admitted that he had also discussed his drinking "problem" with the marriage counselor. He had never missed work because of his drinking and did not consider it a problem.

Respondent testified to other incidents of indignities to which she was subjected. On one occasion appellant physically abused her, although he did not strike her. During this incident she fled behind a locked door which appellant "knocked down" to reach her. Respondent admitted that the incident occurred following her unsuccessful attempt to throw a cup of coffee on him.

On one occasion of respondent's return to Connecticut, she was left at home alone when her husband and a friend left town. She tried to plan her schedule around his, but appellant would not tell her when he was going to be home, thus preventing her from returning to Connecticut more often.

Respondent stated that appellant gave her money only to maintain the house, not for clothes and make-up, etc. Her earnings were being saved for home furnishings. Instead, appellant "squandered" money to rent a private airplane for his own pleasure and to buy shrubbery for his parent's home. Finally, appellant was continuously critical of her; she was a "terrible cook", a "filthy housekeeper", and never dressed and made-up to his satisfaction.

Additional evidence also relevant to the alimony award is that during respondent's time in California she took $6,750.00 from a joint savings account, leaving approximately $1,500.00 to $2,000.00. It is not clear from the record what part of this account may have been contributed by respondent.

At the time of the divorce proceedings, appellant was 37 years old and employed as a pilot by TWA. His salary was $31,619.- 99 a year, plus fringe benefits including disability insurance, pension plan, hospitalization and dental care without deduction from his paycheck. He owns between 250 and 300 shares of stock worth approximately $15,600.00; he had approximately $7,500.00 in the bank, has $300.00 worth of tools, and owns two cars—a 1963 Chevrolet and another of undisclosed type which he had purchased from respondent just before trial for approximately $500.00. Appellant had indebtedness of approximately $5,500.- 00.

Respondent testified that she was generally in good health and was 34 years old at the time of trial. She had undergone surgery for a dental problem for which she

owed $550.00, had a thyroid condition requiring constant medication and required special cosmetics because of her allergies. The expenses for the thyroid condition do not appear of record and respondent admits the cost of special cosmetics was only slightly higher than for "standard" cosmetics.

Respondent has between $10,000.00 and $11,000.00 in savings, $500.00 cash in a checking account, at least $3,500.00 in jewelry, her silverware and household furnishings, and her property in Connecticut.

Respondent was on furlough, although not terminated, from her job. She testified that being a stewardness was the only job she knew, and she would have to go to school to learn another occupation. No testimony appears on the possibility of attaining similar employment with another airline if she is finally terminated.

Both parties were to receive a distribution from the sale of the home in Connecticut. The parties had an equity of between $28,000.00 and $30,000.00 in the home, but the record discloses the distribution had not occurred by the date of trial.

█ Review of a judgment entered in a divorce proceeding is on both the law and the evidence with the appellate court required to reach its own conclusions. T. v. T., 447 S.W.2d 795 (Mo.App.1969); Lane v. Lane, 439 S.W.2d 550 (Mo.App.1969); Heaven v. Heaven, 363 S.W.2d 33 (Mo. App.1962); and Waters v. Waters, 357 S.W.2d 233 (Mo.App.1962). However, the judgment of the trial court is not to be set aside unless clearly erroneous, with due regard given to the trial judge's efforts to evaluate the credibility of the witness. Valentine v. Valentine, 357 S.W.2d 227 (Mo.App.1962); Waters v. Waters, supra; and Sartin v. Sartin, 349 S.W.2d 705 (Mo. App.1961).

█ When, as a review of the record here discloses, the evidence at trial is conflicting, deference is accorded to the opportunity of the trial court to view the witnesses, Robbins v. Robbins, 257 S.W.2d 92 (Mo.App.1953); Irvin v. Irvin, 357 S.W.2d 254 (Mo.App.1962); and Coggburn v. Coggburn, 256 S.W.2d 836 (Mo.App.1963).

█ No clear preponderance of evidence contrary to the judgment of the trial court appears which manifests an abuse of discretion, requiring reversal. Klamberg v. Klamberg, 428 S.W.2d 889 (Mo.App.1968), and Crowley v. Crowley, 360 S.W.2d 293 (Mo.App.1962).

█ An award of alimony should be granted upon the consideration of: "the financial status of the parties; the extent of their individual estates; their incomes; their obligations; their necessities; the contributions of each to the property accumulated during the marriage; the likely future prospects of each; their ages; their health; their ability to engage in gainful occupations; their children and the disposition made of their custody; the duration of the marriage; and whether it was one of affection or convenience; and the conduct of the parties which caused the divorce, and the comparative responsibility of each for it." Swanson v. Swanson, 464 S.W.2d 225, 227 (Mo.1971) [see also Knebel v. Knebel, 189 S.W.2d 464 (Mo.App. 1945); Hill v. Hill, 456 S.W.2d 591 (Mo. App.1970)].

█ The allowance of alimony is in the sound discretion of the trial court, to be corrected on appeal if there has been a manifest abuse of that discretion. Swanson v. Swanson, supra, and cases cited therein. Upon evaluation of the enumerated considerations with regard to the facts of this case, the judgment as to granting of the divorce and the alimony award of $200.00 a month is not clearly erroneous.

The judgment is affirmed.